---

## THE PHŒNIX IRON COMPANY *vs.* THE NEW YORK WROUGHT IRON RAILROAD CHAIR COMPANY.

1. Where a receipt is given by A B, secretary of a manufacturing company, that certain collaterals are given upon condition that the company should be released from all further liabilities, provided the secretary of the company so wishes, does not constitute the secretary, in any way, an arbitrator, but the option of the company is legally made either by itself or by any one acting as its secretary.

2. The receiver of such company, appointed by the Supreme Court of New York, where such company was created, can legally express such wish.

3. If auditors in attachment do not proceed according to law, or if they disregard the evidence before them, the court may set aside their report, and refer the matter back to them.—*Per* WHELPLEY, J.

This cause came before the court on a rule to show cause why the report of auditors in attachment should not be set aside. The application was made by Fuller, Lord & Co., creditors, who came in under the attachment.

The facts sufficiently appear in the opinions delivered.

Argued at February Term, 1859, before the CHIEF JUSTICE, and Justices VREDENBURGH and WHELPLEY.

*Zabriskie*, for motion.

*Parker* and *Keasbey*, contra.

VREDENBURGH, J. This attachment was issued on the 6th, and returned on the 14th of December, 1857. Upon the appointment of auditors, Fuller, Lord & Co. proved their account against the defendants to the amount of $10,177.06, due on the 18th of June, 1858.

It also appeared in evidence before the auditors, that after the issuing of the attachment, to wit, on the 30th of December, 1857, the defendants transferred to Fuller, Lord & Co. collaterals to the amount of $17,269.23, in consideration of which they released certain of the directors of the defendants from personal liability. Also that, on the 22d of February, 1858, the defendants transferred to Fuller, Lord & Co. other collaterals, to the amount of $2751.94, upon an agreement, of which the following is a copy: "Received of Alexander Frear, secretary and treasurer, the following claims, notes, and bonds, as collateral on the indebtedness of the New York Iron Company to us, viz., (specifying them.) The above securities are given upon the following conditions—we

agreeing to release the New York company from all liabilities to us, either as endorsers or principals, provided the secretary of the said company wishes us to do so, and giving us notice to that effect in writing.—New York, February 22d, 1858.

(Signed,)    FULLER, LORD & Co."

And that afterwards J. W. Fonda was appointed the receiver of the defendants, under proceedings had in the Supreme Court of the State of New York, who thereupon served upon Fuller, Lord and Co. the following notice in writing:

"Office of the Receiver of the New York Iron Co.,

38 Wall St., October 20th, 1858.

Messrs. Fuller, Lord & Co.

Gent'n—By the terms of your receipt to Alexander Frear, secretary and treasurer, dated February 22d, 1858, you agree as follows: (here copying the foregoing receipt.)

In pursuance of the same, I hereby give you notice, as receiver of the said company, that you are required to receive the said securities as above provided, and to release the company accordingly.

Very respectfully your ob. ser't,

J. W. FONDA, Receiver N. Y. I. Co."

The estimated value of the securities transferred to Fuller, Lord & Co., is $6102.79.

On the 2d day of November, 1858, the auditors reported in favor of other creditors, to the amount of $19,517.06. They disallowed the account of $10,177.06, presented by Fuller, Lord & Co.

Fuller, Lord & Co. contend that these securities were received by them only as collateral, unless the secretary of the defendants should wish otherwise, and notify them thereof, which he has not done, and that they are entitled to a report from the auditors of the full amount due.

The plaintiffs in attachment contend that the securities last transferred were received by Fuller, Lord & Co., as payment at the option of the defendants, upon their signifying their wish to that effect, or at most, that Fuller,

Lord & Co. must realize their securities, and take a report only for the balance.

The first question is as to the legal construction of the receipt of the 22d February, 1858.

Fuller, Lord & Co. insist that it constitutes the secretary a species of arbitrator, and that as he has not arbitrated, they remain as collateral.

This depends upon whether, by the term "secretary," in the receipt, was meant the individual Alexander Frear, or the agent of the company. It is very apparent that it meant the officer, and not the individual. There was room, therefore, for no arbitration about it. The option of the agent was the option of the company. It was to be a payment at the option of the defendants.

The only remaining question is, has that option been expressed according to the agreement of the parties? It is true that no notice has been given by Frear, but the notice was to be given by the secretary, and not by Frear. It was not the individual that was to give the notice, but the agent of the company, the secretary, or, in other words, the company. If the company gave the notice, they were their own secretary *pro hac vice:* whoever they employed to do it, appointed either by their own act or through the channels of the law, was their secretary for that purpose.

In this case it appears that Mr. Fonda was, under the laws of New York, where this corporation existed, appointed by their Supreme Court receiver of the defendants, and, as such, had all the powers of the defendants over their assets. He had power to collect all the debts of the defendants, and convert all their assets into cash, preparatory to a division thereof under the orders of that court. He had power to sue for and collect these very securities from Fuller, Lord & Co., and for that purpose stood in the shoes of the defendants. The law had transferred the option of the defendants to him. He could either sue for these securities, or if he deemed that the

defendants would realize more assets from exercising the option, his exercise of the option was in the legitimate progress of collecting the assets. In making the election, he acted as the agent or secretary of the defendants for that purpose. His election was the election of the defendants themselves. The only difference between him and Frear was in the manner of their appointment—the one was by the act of the defendants, the other by act of law.

The only remaining question is as to the operation of the receipt, supposing its terms to have been complied with.

It is objected that it is not a release *per se*, but only an agreement for a release.

But as Fuller, Lord & Co. have these securities under an agreement to release, their receiving, and realizing or keeping them operates as payment. They retain these securities after notice, not by way of collaterals or on account, but by way of payment. This renders it unnecessary to consider how far, if at all, the auditors are authorized to adjust the equities between the parties.

The rule must be discharged.

WHELPLEY, J. This is an application to refer back the report of auditors, with instructions to allow the claim of Fuller, Lord & Co. presented and proved before the auditors. The plaintiffs claim that this account, amounting to $10,-177.06, is paid in whole or in part, in fact or in law, and ought not to be allowed.

The evidence showed that the defendants, after the issuing of the attachment, and on the 30th of December, 1857, in the city of New York, transferred to Fuller, Lord & Co. collaterals to the nominal amount of $17,269.23, for which they released the directors, who were individually liable.

On the 22d of February, 1858, the defendants transferred to Fuller, Lord & Co. other collaterals, to the amount of $27,051.94, upon an agreement, which stated

that they were received of Alexander Frear, secretary and treasurer, as collateral security on the indebtedness, and that the securities were given upon the following condition—Fuller, Lord & Co. to release the defendants from all liabilities to them, either as endorsers or principals, provided the secretary of said company wished to do so, and gave them notice to that effect in writing.

On the 8th of February, 1858, the company was enjoined, upon the application of creditors, by the Supreme Court of the State of New York, and its whole property sequestrated for the use of creditors. On the 22d of March following, a receiver was appointed by an order of the Supreme Court, conferring upon him the amplest possible power over the entire property and affairs of the company.

On the 30th of October following, the receiver gave the notice to Fuller, Lord & Co. called for by the receipt of February 22d, 1858.

The testimony of Frear and Dudley B. Fuller was taken, and the auditors refused to report in favor of the claim of Fuller, Lord & Co., or any part of it.

Our first inquiry must be, what is the power of this court over the report of auditors.

By the act, (*Nix. Dig.* 35, § 25,) the court is required to appoint auditors to audit and adjust the demands of the plaintiff and applying creditors, and it is made their duty to ascertain the sum due to the plaintiff and to each of the creditors applying, and make their report, which is to be filed, and the third term made absolute, and judgment entered thereon.

A writ of attachment is a mere mode for the recovery of a debt against the property of a defendant, when he cannot be reached by the ordinary process of the courts; it is not for the benefit of plaintiff only, but of all applying creditors, who are to share *pro ratâ* in the avails of the property attached. It is neither a bankrupt or insolvent law, nor to be construed by the rules adopted for the

construction of such statutes; it does not exempt the defendant from arrest, or discharge either the person or the property of the defendant; creditors are not bound to bring in their claims; the only consequence of a failure to do so, is loss of all share of the property attached.

If the defendant appear, and dissolve the attachment, the trial of the claim of the plaintiff or applying creditor must be by jury. The jury are to find the amount due the plaintiff, or creditor who has applied, in the same manner as they would if the suit had been commenced by summons. The power of the jury, after the dissolution of the attachment, can be no greater or less than that of the auditors, in auditing the demands of the plaintiff and applying creditors. The jury ascertain the amount due to the party, whether plaintiff or applying creditor, and the verdict fixes the amount upon which the distribution is to be made. Nor do auditors resemble receivers of insolvent corporations in their essential characteristics. Receivers, by express provisions on that subject, are invested with large powers, for the purpose of winding up the whole business of a corporation. *Nix. Dig.* 348, § 12. An appeal lies from the decision of receivers directly to the chancellor, who is to determine it in a summary way, and make such order as he may think equitable and just. An attachment is a proceeding in a court of law, between creditor and debtor, for the enforcement of legal demands resting upon contract. Bankruptcy cases and insolvent corporations are proceeded with and wound up in a court of equity; auditors sit to hear the party, and adjust his demand in a court of law. It must be such a demand as will support an action, where a verdict for a specific sum can be rendered, except in case of a demand not yet due.

Their function is that of a jury, to hear and decide upon the legal claim brought before them upon the evidence according to law; they have no discretionary power to allow or not to allow a claim; they must decide according to law and evidence. The legality of their action

must be subject to review; and that review, from the nature of the case, must take place before their report is made absolute. The report is made to the court, for the purpose of being subject to the action and control of the court.

It could never have been designed to make these persons appointed by the court to report the debt ascertained by them, irresponsible, amenable to no tribunal for the correctness of their decisions; it would be contrary to all the analogies of the law. I entertain no doubt but that this court has the power to look into this report, and ascertain whether the auditors have proceeded according to law, or whether they have disregarded the evidence before them ; and if they have so done, in the opinion of the court, to set the report aside, and refer the matter back to them. And such has been the previous action of this court. In *Berry* v. *Collet*, 1 *Halst.* 182, this court directed that the report might be referred back for error in law committed by the auditors. *Taylor* v. *Woodward*, 5 *Halst.* 5.

The auditors in this case determined that Fuller, Lord & Co. had no lawful claim. In this, I think, they were right. The claim amounted to $10,177.06. It is not alleged that any part of this claim has been paid, unless Fuller, Lord & Co. were bound to credit the collaterals mentioned in the receipt of February 22d, 1858. The other collaterals were received without any agreement to receive them as payment in any event, and it is not alleged that Fuller, Lord & Co. have ever received them, or agreed to receive them, as payment.

But it is said—

*First.* That Fuller, Lord & Co. agreed to discharge the defendants from all liability as principals or endorsers, provided the company so elected; that the election spoken of, by the receipt of that date, might be made as well by the company, or any other officer, as by the secretary, to whom it was given; and that the election was duly notified to the exceptants in writing, according to the

terms of the receipt. The collaterals were received of the company, for the benefit of the company, through Frear, the secretary and treasurer. It does not appear that he had the slightest personal interest in the matter: no imaginable reason can be assigned why the option should not be exercised by or in behalf of the company. The phraseology of the receipt is, that the defendants were to be released, provided the secretary of the company wished to do so. The option was not to be exercised by Frear, but by *the secretary* of the company. It was not a personal trust reposed in him ; it might be exercised by his successor in office, by any person lawfuly authorized to act as the secretary of the company. The transaction does not disclose any reason why an umpire was necessary to stand between the parties ; the only thing to be determined was, whether the secretary wished that course taken ; it was a pure option—election for the benefit of defendants, and the naming of the secretary was but carrying out the previous phraseology of the receipt—that was from him for the company ; the option was to be by him or the secretary, also for the company ; the secretary was named as the mere agent, not as an umpire.

Fonda was the receiver : as such, if his appointment was regular, he succeeded Frear as secretary and treasurer, and by the strictest construction of the power, had a right to execute it ; if it was but a bare power, I do not think it necessary to settle the question whether Fonda was properly appointed a receiver, with the large powers conferred by the order. Under the authority of a court, with power to decide that question, he was put in possession of all the assets of the corporation, and clothed with all the powers necessary to act; he was a receiver *de facto*, and I do not think the exceptants have the right, in this collateral proceeding, to question his right to act. I think the notice served by the receiver operated to change the collaterals into payment, and that by the agreement of the parties, they were, after the reception of that notice,

State v. Jersey City.

no longer at liberty to hold the defendants to any liability, either as principals or endorsers.

The report of the auditors, excluding the claim of **Fuller, Lord & Co.**, was right, and the rule ought to be discharged.

The CHIEF JUSTICE concurred.

CITED *in Stewart* v. *Walters*, 9 *Vr.* 279.